The first case set of cases really is I will just refer to them as on here. It's Klein versus Shepard, although the Shepard case is actually being heard on the breeze. So for reference, 21-4064 and one of the cases that is not being heard on the breeze is 21-4065. Council for appellant, if you'd make your appearance and proceed. Thank you, your honor. May it please the court, your honors, counsel and observers, today's proceedings. My name is Stephen Paul and I represent the six appellants whose cases have been consolidated for this proceeding. Janet Roe, Mr. Armond, Mr. Hamblin, Carrie Hedrington, the Howells, the Finkus. I also represent others who have been sued by the receiver, Wayne Klein, under similar legal theories and similar factual scenarios. Those cases are not as far along the path of litigation as these parties. The ruling today will impact not only these six cases that are before the court today, but other cases the receiver has filed for collection of amounts he claims are due and owed under the Utah Voidable Transfers Act. There are three things that I want to convey in my arguments today. First, the Utah Voidable Transfers Act is not a strict liability statute. Second, these are not Ponzi scheme cases. The Ponzi scheme presumption does not apply. And third, these appellants are not insiders and they are therefore entitled to show their good faith and reasonably equivalent value they provided for the payments that they received. Why don't we start with three? As it relates to good faith, it's not my understanding that the appellee can test really the issue of good faith. The point is a reasonable value. And what reasonable value did your clients provide in this scheme? My clients were advocating, were selling the solar lenses that were part of the scheme, but they did not know that there was a tax avoidance scheme. Well, that sort of conflates the two, doesn't it? They didn't know goes to the question of whether they operated with good faith. That doesn't go to the question of whether they gave value. I mean, if their action of selling these solar lenses perpetuated the fraud, and that's what the case law talks about, then that's not value, is it? Well, we disagree. We think it is value. The work, the time, the effort they put in, the learning, the knowledge about the equipment and what was needed to sell the equipment is value. And so the real question is whether the appellants are prohibited from putting on their evidence of value and whether it becomes reasonably equivalent value. Let me try it again. And yes, I get your point. It's value as a matter of fact, okay? I understand. Sweat equity, if you will. But the question is, as a matter of law, is it value? And I mean, what's your best case that as a matter of law, this activity within the context of this scheme would be deemed to be providing these entities, these, you know, under the language zombie entities, with value? Yeah. I think the two cases that we cited predominantly in our brief is the NREA universal clearinghouse case, which is the 60 bankruptcy reporter 985, and also the Merrill versus Allen case, excuse me, the Wyndham versus Allen case, which is a district court opinion from Judge Jill Parrish. And I think the two cases that we cited are two very different cases. They decided in our briefs, it was decided on November 17th of 2020. And without walking through the facts of those cases, unless you want to, what legal proposition in those cases do you suggest lines up with the sale of solar lenses here as equaling value? I think the activity of performing the service of going out and developing clientele and marketing the lenses. Well, the district court rejected that, though, right? The district court said, I don't care about your sweat equity. What I care about is whether these receivership entities got value. And it's not you worked hard, so therefore you gave value. It's the value that is received. And what the receivership entities got was money, but it wasn't real money. It was fraudulent money. So the district court says, in that circumstance, as a matter of law, I'm going to say there is not reasonable equivalent value. And that's what we're deciding today, isn't it? It is. That's correct. It is. And I think it's incorrect as a matter of law. And I think that's because, first, the statute is not strict liability. The statute, the Voidable Transfers Act does not say if there's a payment as part of the scheme, it is therefore voidable. But think, with reasonable equivalent value, we can think of all kinds of situations where that would be so. Where the company bought new tires for automobiles or something, and whatever the tire salesman gave reasonable equivalent value. It could have sold the tires to someone else. But this isn't that kind of a case. And so you're off in this middle land where what's being offered to the companies, the receivership entities, is bad money. And that's not the same as tires. So get me from legitimate tire sale to bad money are the same thing. I think they're the same thing because of the actor who's performing the service. In this case, we have teachers and educators and people who are convinced that this was a legitimate business, multi-level marketing business, where they could make a little bit of extra income. That's predominantly who made these lens sales, who my clients are in this case. And so the connection is tied with the good faith and reasonable equivalent value, which is a defense to the voidable transaction. Well, let me ask it this way, and then I'll back out. Reasonable equivalent value, how are these receivership entities any better off from having gotten this money? Well, I understand the legal argument that the influx of more money simply gave the tax avoidance scheme more legitimacy and more ability to keep perpetuating. But I think the perspective that needs to be seen is whether there is value. And so whether the service and the time, the dedication, the education is value, and I think the cases support that it is value. And so the question becomes whether it's reasonably equivalent to the money that they received. An illegal product, could the receipt of an illegal product also constitute reasonable value, reasonable equivalent value? Sure. I would argue that under these facts, and you're hypothetical, then yes, it is. But the question becomes whether it's good faith. So if I sell methamphetamine to you, that could be reasonably equivalent value, even though the sale of methamphetamine is an illegal product. That's what I'm asking. I'm not asking you about the facts of this case. Okay. I'm asking you about the sale of an illegal product. Can the sale of an illegal product ever be reasonably equivalent value? I would have to argue that no, the sale of an illegal product would not be reasonably equivalent value. Okay. Sorry. Well, I think the Ponzi scheme presumption is along those similar lines, where the courts have found that in a Ponzi scheme, because the Ponzi scheme is an illegal business structure, then we're not going to recognize the value that came in. Okay. But this is not a Ponzi scheme. Gotcha. Now, let's credit everything that you responded to, Judge Holmes and Judge Phillips. The Utah Uniform Securities Act prohibits transacting business in this state as a broker, dealer, or an agent without a license. If we hypothetically reject your argument under SEC v. Howey and conclude that the sale of these lenses did constitute an investment contract and therefore a security, Judge Newford relied not only on what you've been discussing with my colleagues, but also on the fact, on independent ground, that the sale of these lenses constituted the sale of a security without a license and therefore could not constitute reasonably equivalent value. And though I understood that you had challenged the rationale of this, the first rationale, I never saw where you challenged this rationale of Judge Newford on this issue of reasonably equivalent value. Did I overlook it? No, because that's probably an angle that we didn't see as we were preparing the briefs. What I understood Judge Newford's ruling to be is that the receiver has standing, because our argument was against his standing, has standing to pursue the forfeiture of the commissions. Under the securities act? Yeah, but whether their being unlicensed, selling a security, creates almost an illegal position. If you sell me an unlicensed security, now maybe that's not as insidious as selling me methamphetamine, but I don't know that there's any difference in the legality of either one. Both of them are clearly illegal products under Utah law. I would argue that these parties are still entitled to pursue the good faith and reasonably equivalent value argument in light of the claim that they were unlicensed and that this was a security. But you don't dispute that there wasn't a license, right? Correct. You dispute that there wasn't a security. Yes. Right. Got it. Well, to the point of disputing that it was a security, in your brief you don't have a specific heading that addresses that. You address that, I think, under the third element of your brief related to standing or something like that. How, in effect, is that really a challenge? I don't see how those two arguments connect. Yes, section three. Again, it's predominantly because we don't think that that was the thrust of Judge Newford's grant of summary judgment. It may have been a component of it, but the thrust of the argument is these parties couldn't have given reasonable equivalent value because of the tax avoidance scheme. And I'm sorry, I may not have been clear in the way I was trying to ask the question. And there's a part of your brief at section three, the very beginning of it, talks about SEC versus HOE, I think, and appearing to dispute the question of whether these were actually securities or whether they were products. I guess what I'm getting at is the nature of that argument comes within the context of another argument that is dealt with in section three, and it wasn't clear to me that you really were making that challenge. I mean, is it a standalone challenge, or were you? Because if you were, it just strikes me that it was done in a fairly perfunctory fashion, but maybe I'm missing something. No, I don't think you're missing anything. I think there's a page limitation of what we can address in our briefs, and our focus is on whether we can demonstrate to the court that these parties are entitled to summary judgment, that the court overstepped its bound, that it erred in granting summary judgment, because these defendants under the Uniform Avoidable Transfers Act are entitled to put on a defense of good faith and reasonably equivalent value. So were you purporting to challenge the ruling about this being a security? Yes, we must do so, obviously. Okay. Let me just follow up on Judge Bacharach's hypothetical, and I'll give you a little time on rebuttal. The question, as I understood it, it was the sale of methamphetamine and whether that leads to reasonably equivalent value. But in our situation, we're talking about money going back, right, to another entity. In other words, let's say you have a supplier, you have a street dealer. A street dealer sells drugs to somebody on the street and gives the money back. And so that little clip is where we're talking about whether it's reasonably equivalent value, right? I haven't given that hypothetical much, but I think in this case it would be the pusher who keeps a percentage of the transaction and the receiver is trying to get whatever percentage of the transaction that the actual street dealer kept, as opposed to his cost of goods sold, which he passed along to his supply chain. Okay. Because in this case, the commissions that are being recovered, when someone would buy a solar lens, they would pay online and that would go through the website, and then the company would issue a commission payment back to my clients based on what was paid through a website online. And it was a multi-level marketing method, so whoever had a direct, they would include in their online payment who their direct agent was, and then if there were people in the downline, they would also receive a commission. And some of those people today were part of that downline commission. Okay. I see that I'm out of time. I would like to reserve a little bit of time for rebuttal, or if there are any other questions, I'm happy to address any other questions. As I said, we'll give you a little rebuttal time. We'll just see how it plays out with the argument on the other side. Thank you. Good morning, Your Honors, and may it please the Court. Jeff Balls on behalf of the Court, appointed receiver Wayne Klein. I'd like to start out addressing two arguments that were raised for the first time in the appellant's reply brief. One of those the Court's already touched on, and that's the Universal Clearinghouse and then the Wyndham case. And I have two points on that. One is what Judge Bacharach talked about. Here there was an independent basis as well. And I'd point the Court to this Court's decision in Wing v. Dockstader where this exact thing happened. There was a challenge. This Tenth Circuit addressed the Warfield case, and it said that outside of bankruptcy, it is not appropriate for a district court to ignore the impact that the services had on perpetuating the fraudulent scheme. But those cases, and there are a lot of them, you don't have a conceded point, which for our purposes we do, that the sales force acted in good faith, that these were just like the investors. The investors acted in good faith, gave money. The sales force acted in good faith, gave services. Why isn't reasonable equivalent value more a question of whether the commission was reasonable? In other words, if it were a 90 percent commission to my brother-in-law, then we would say that's not reasonably equivalent value. But I don't know what the commission here was, but nobody has said that it was an unreasonable amount. Because we look out in this, we look at what the defrauded entity, or the debtor in this case, received in return. That's what the case law says. And it received money. Let's say it's 80-20. I don't know what the numbers are. But at one moment in time, the receivership entity has received, let's say, 80 percent. Now what happened after that really isn't the sales force's problem, is it? It provided the money. And why isn't that reasonably equivalent value? And the rest of it that happens downstream is an entirely different matter. And it's up to you. It's up to the receiver to come in and show they did know that this was bad. Because under the Uniform Voidable Transactions Act, there has to be two things that are shown. You both have to show good faith and that reasonably equivalent value was given. The first is shown for our purposes, right? That's correct. And the second one is just what I was asking you about, which is, number one, the level of the commission. And that's one way it could be unreasonable. Or the timing of the thing, where for the brief moment in time before Neldon Johnson grabbed the money or Mr. Shepard or whoever, for that moment in time, those receivership entities did receive equivalent value because there's money sitting in their accounts, right? But that value was used to then perpetuate and further the fraud. We're not talking here about value that went to the company that was legitimate money. This is all fraudulent money. The other side talks about this not being a Ponzi scheme, but this is like a Ponzi scheme. This is an illegitimate business. But you're doing the opposite. What you're doing is essentially attacking their good faith, that this is such an awful business arrangement that they therefore shouldn't get their commission. But good faith is the order of the day right now. That was never challenged. And I don't think I'm going to their good faith, Your Honor. I think I'm going to the good faith of the receivership entities or the controller of those receivership entities. Because we're looking at, you know, was this transfer made with the intent to hinder, delay, or defraud? In this case, the court found that it was. And this is focusing on the bad faith or the knowledge of the defrauded receivership entities. And so that's when I'm talking about, you know, the fraudulent purpose, that goes to show the intent to hinder, delay, or defraud. They then have to show reasonably equivalent value. Below, in front of the district court, they did not argue at all that reasonably equivalent value was given to the receivership entities. Instead, they argued that their sweat equity was what mattered, what they gave in, not what the receivership entities received. There was never any argument, Your Honor, that the receivership defendants received any value for this, except here on appeal. And they didn't receive any value, in your view, because the money that they did receive was dirty money. It was, Your Honor. That's correct. That's the theory. That is. Wasn't the investor money also dirty money, then? Should the investors be allowed to recover? Because by investing, they were promoting the fraud, just like the sales force were, weren't they? We don't have that here, Your Honor. We don't have any. Let me back up. The district court, in the underlying action, we're talking about the civil enforcement case, has allowed some investors to recover on a certain amount of money being first going to the government. But you're correct, Your Honor, that to the extent that they got additional things out of their investments, they would not be entitled to this. If they didn't pay their taxes back, they wouldn't be entitled to recover any additional funds out of this. Is there a difference between the good-faith investors, and you can have bad-faith investors, too, who are in it early and there were extra money if you got more people involved in this case. Is there a difference between good-faith investors and good-faith salesmen, women? I don't know that there is, Your Honor. And so to the extent that they got back additional funds, the receiver would be entitled to claw those back. So in a normal Ponzi scheme case, if you have an investor that received more than they received, the receiver would be able to claw back that net proceeds. Here as well, to the extent that commissions were paid out in a similar scheme, the receiver would be able to recover those commissions as well. So to that extent, there's not a big difference between those. Those are much closer in comparison than it would be to a commission recipient and a provider of tires, or a power company like the Universal Clearinghouse case talks about. So the correlation you're making with a Ponzi scheme in this specific context would be the notion of the profit of the person in the Ponzi scheme. In other words, the person who invested in the Ponzi scheme, theoretically, you could claw back the profit that they received, right? Correct. Okay. And so to the extent there is profit from these investors, we would be able to claw that back as well in this case. And you're clawing it back through disgorgement? We're clawing it back under the Uniform Voidable Transactions Act. And its authority for disgorgement? Correct. Now, the restatement of contract says that when you have a contract that is unenforceable based on public policy, that you just leave the parties where they stood, the court doesn't take action. Now, which seems inconsistent with the idea that you can obtain disgorgement as a remedy for an illegal contract. What am I overlooking? Yeah. What's being overlooked, though, Your Honor, is the fact that here we have defrauded entities that were evil zombies, as the Shulls case talked about. And this case talked about inclined to be Cornelius. We have here, and I think Your Honor is going to the doctrine impari delicto, where the Shulls case says that- No. No, I'm not going to impari delicto. What I'm asking is, under just general contract law, that if for a gambling contract, that I spend money to a bookie for a bet, and I seek disgorgement, I want my bet back, the courts routinely, or a drug contract, the courts routinely would say, no, there's no remedy. We're not going to do anything affirmative, disgorgement or otherwise, because it's an unenforceable contract. We leave you where you were. And that's what I'm wondering, is if you can obtain disgorgement without some sort of equitable defense based on fault, just as a general limitation on the court's remedial power when you have an unenforceable contract. This court's addressed a number of times that they're not willing to let people profit from an illegal contract. And that's what these commission recipients would be doing. The court's addressed that, I believe, in the- I don't have the sites here in front of me, but in a number of cases, the court has said, we will not let people profit based upon an illegal contract. And that's what these people would be doing here. They were not licensed to sell securities. The securities were not registered. And so they would be getting money for selling securities that's not allowed under Utah and federal law. And so the courts have routinely held, and this court has as well, that such amounts can be recovered by a receiver when they step in. Let me piggyback on Judge Bacharach's hypothetical to make sure I understand a distinction in any way that's kicking around in my head. In the gambling example, unlike the zombie theory, the gambler was acting volitionally. And therefore, the notion that the law would say that in that contract, they let the party stand where they stand, it's because they volitionally entered that illegal contract. I take it your theory here, and I'm just trying to play this thing out, but I take it the theory would be that gambler was a zombie. And therefore, the notion of now that somebody stepped in the shoes and freed the gambler of his ghost, and then that individual should be able to discord. I think that's right, Your Honor. I don't know if the gambler is a zombie, but the receivership entities in this case certainly were zombies. So that's the distinction. Whether you're acting volitionally on your own or whether you're acting through something, some unlawful thing that animates you. And if something unlawfully animates you, I guess the whole point of this litigation is that that corporation should not be held responsible for what it did when it was animated by this theory. Correct, Your Honor. So while I think this court, this case can be decided on the alternate grounds that were set forth in Wing v. Dockstader, I think the court should follow Warfield's case here and say that where the commissions are just paid to further another fraudulent scheme, that those as a matter of law should be recoverable. Whether or not it's based upon an illegal contract. Did you read the appellant's brief as actually raising a stand-alone challenge as it relates to the question of whether at issue here is a product or a security? I did not read that, Your Honor. I don't think they challenged the lower court's decision that this was a security under the Howey case. We addressed it in our briefs just out of an abundance of caution, but I did not read their brief at all as challenging the finding that the solar tax sales were a security. But you didn't make any tandem argument that this was waived or forfeited or anything of that sort, right? I think I mentioned that it wasn't addressed. Yeah. And they didn't raise this. At least to me, I said it wasn't clear whether they raised this, but out of an abundance of caution, we did address it. Because even if they did raise it, which I don't think they did, it does fail on the merits here. All of the three elements of the Howey case are met as the district court found. There's been no challenge to those district courts' conclusions. There's been no challenge to the undisputed facts upon which the court relied in making that determination. Unless the court has any further questions, I think that's all I have for your honors at this time. Thank you. Thank you. Let's give you a minute in rebuttal. Thank you, Your Honor. Thank you, Your Honor. I think there's two things that I would like to focus on. While the appellees concede, and in the court below they conceded good faith, the issue of reasonably equivalent value is still a valid reason why these defendants, why these parties should have the opportunity to defend themselves. This is not a Ponzi scheme. It is not an illegal contract. These are innocent parties who were duped, as much as the investors were, in becoming part of this tax avoidance scheme. What they were doing, which is selling solar lenses, is not unlawful. Selling part of the solar energy equipment is not unlawful. They were educated about it, they understood it, and they believed in the product. By marketing that, they thought they were doing something good. We believe that the trial court erred in not giving them the chance to respond to that argument. The Uniform Voidable Transfers Act is not a strict liability statute. Your time is over, so if you've got one statement to make, make it, and put a period on it, and sit down. I ask the court to adopt the universal clearinghouse approach, which is consistent with the policy of the Uniform Voidable Transfers Act, and recognizes that the act itself is not intended to be used as a club to beat weak defendants into coughing up money simply because they received payment from the debtor, but gives the parties the authority to demonstrate the defenses granted by the statute, the right to show their good faith in receipt of funds, and what they gave as reasonable consideration to the payor for the money received. That's a long sentence. Thank you. It was one sentence. It was one sentence. He complied. Thank you. Case is submitted.